## CECIL NAT. BANK v. THURBER et al.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1894.)

No. 52.

1. EQUITY JURISDICTION—DISCOVERY.

Where a bill seeks relief as well as discovery, the prayer for discovery cannot be made the ground of equity jurisdiction unless complainant alleges his inability to establish, at law, the matters of which discovery is sought; and the bill should be dismissed when the answer in fact contains no discovery, and it appears that complainant is abundantly able to establish such matters by other evidence.

2. SAME—INJUNCTION.

A prayer for injunction, not as a primary remedy, but merely to preserve property from sale pending litigation concerning it, cannot be made a ground of equity jurisdiction, when it appears that the property had already been sold when the bill was filed, of which fact complainants had knowledge, or the means of knowledge.

3. SAME—TRUSTS.

A suit to hold a bank liable for the value of goods wrongfully pledged to it by complainants' agent as security for a personal loan, and sold by the bank thereunder, is not cognizable in equity on the theory that the goods were impressed with a trust of which the bank had notice, when complainants do not attempt to trace the proceeds into any particular fund of which they still form a part, but merely seek a decree which will bind all the bank's property, as a judgment at law would. 52 Fed. 513, reversed.

Appeal from the Circuit Court of the United States for the District of Maryland.

This was a suit by Horace K. Thurber, Francis B. Thurber, Albert E. Whyland, Alexis Godillott, Jr., and Jacob S. Gates, copartners trading as H. K. & F. B. Thurber & Co., against the Cecil National Bank and Arian M. Hancock. The bill alleged that Hancock, agent of plaintiffs, wrongfully hypothecated certain warehouse receipts to the defendant bank; charged the bank with notice; and asked for a discovery and injunction, and a decree that the bank deliver the goods covered by these receipts or their proceeds if sold. A decree was rendered in the circuit court against the defendants, (52 Fed. 513,) whereupon the bank appealed.

Robert H. Smith and W. L. Marbury, for appellant.

Thomas G. Hayes, for appellees.

Before GOFF, Circuit Judge, and SEYMOUR and SIMONTON, District Judges.

SEYMOUR, District Judge. This is an appeal by one of the defendants in a suit brought by the members of the firm of H. K. & F. B. Thurber & Co. against the appellant and one Arian M. Hancock. A decree was rendered in the circuit court against the defendants, (52 Fed. 513,) but only the bank appeals. As to Hancock, there has been an order of severance, and leave has been granted to the bank to prosecute its separate appeal.

Appellees alleged in their amended bill, that the defendant Hancock was their agent, and as such was authorized to sell for them

canners' goods in Hartford county, Md.; that he was further authorized to make advances to canners to assist them in preparing canned goods for market; that such advances were to be secured by hypothecation of the goods to plaintiffs, and, when prepared, the goods were to be shipped to them for sale; that, after sale, any balance that might remain after paying advances, charges, and commissions, was to be paid to the canners, and any deficiency to be charged against them; that Hancock was to be paid a commission. The bill further alleges that Hancock made large advances in pursuance of this employment, but that, instead of shipping the goods upon which he had made such advances to plaintiffs, he deposited them in various warehouses, taking warehouse receipts in his own name as agent, and on such receipts hypothecating them to the defendant the Cecil National Bank for loans made by the bank to him personally; that said Hancock caused said goods to be delivered to the bank, and that the bank had sold them, either wholly or in part. The bill charges the bank with notice. Plaintiffs ask for a discovery, an injunction, and a decree that the bank deliver to them any of the goods which may remain in their hands, and pay them the value of those sold. No injunction was ever issued, as all the goods were sold before the institution of the suit; nor was any discovery made by any of defendants. A decree was rendered by the circuit court for the payment of $13,188.32, with interest.

We think the bill should have been dismissed for want of jurisdiction. It cannot be sustained as a bill for discovery for several reasons. It is not a bill for discovery, but for relief. To make his prayer for discovery a ground of equitable jurisdiction, plaintiff should allege his inability to establish at law the facts of which the discovery is sought. It would have been otherwise were the bill merely for a discovery. "It is not necessary to allege in the bill [for discovery] that the plaintiff has no other witness or evidence to establish at law the facts of which the discovery is sought. It would be otherwise if the bill should not only ask discovery, but should ask relief in equity, for in the latter case the bill would seek to withdraw the whole jurisdiction from the proper court of law, and to give it to the court of equity." Story, Eq. Pl. § 324. As appears from the evidence, plaintiff was abundantly able to prove the facts with respect to which he resorts to discovery by witnesses other than defendants. No discovery was made by the answers. "If the answer of the defendant discloses nothing, and the plaintiff supports his claim by evidence in his own possession, unaided by the confessions of the defendant, the established rules limiting the jurisdiction of courts require that he should be dismissed from the court of chancery, and permitted to assert his rights in a court of law." Russell v. Clark, 7 Cranch, 69.

Nor is the jurisdiction of the court aided by the prayer for an injunction. This is not a bill for an injunction as a primary remedy, but a bill for relief, seeking to secure certain property, and containing a prayer that it may be preserved from sale during the

litigation by an injunction; but there is no allegation that defendant is insolvent. The fatal difficulty with the injunction as a ground of equitable jurisdiction is, however, that, when the bill was filed, there was no property to protect,—it had all been sold; and that within the knowledge of plaintiffs, or at least plaintiffs had the means of knowledge within their reach.

The only remaining ground of equitable relief averred in the bill is the court's jurisdiction over trusts; and it is upon this ground that the court below sustained the jurisdiction. Courts of equity administer trusts by appointing and removing trustees, by controlling their use of trust funds and their distribution, and by compelling trustees to account for, and pay over or deliver, money or property in their possession as trustees. They lend their aid to the owner of money held in trust, and misappropriated by the trustee. When trust property has been misapplied and converted into some other species of property, if its identity can be traced, they consider it, in its new form, as still impressed with the trust. If it has gone into the hands of a third party affected with knowledge of the trust, they treat it, notwithstanding any change of form or custody, as still subject to the original rights, and make its new holder a trustee *in invitum.* The right ceases when the means of ascertainment fail, which is the case, Mr. Justice Story says, "when the subject-matter is turned into money, and mixed and confounded in a general mass of property of the same kind." Eq. Jur. § 1259. The last proposition is generally true, but, according to the later cases, does not apply when the money can be traced into some existing fund of which it forms a part. It does apply, however, when the trust property has been converted, as is alleged in the present case, and its proceeds can in no way be distinguished among the assets of the party who has received them. The plaintiffs are not seeking to trace the money advanced by them to their agent, and by him to canners, into either the canned goods hypothecated to them or into any new form which may have resulted from the sale of such goods. They have asked for, and have obtained, a decree for money, which affects all of appellant's estate, but not any particular part of it, in precisely the same way that a judgment at law would have done. The bill does not ask for a decree specifically charging the bank's estate, or any part of it; nor would the facts have justified such a bill. At the institution of the suit there was no special fund to be followed. The case of National Bank v. Insurance Co., 104 U. S. 54, which was relied upon to sustain the bill, is not, as we conceive, an authority in point. It was a suit brought by the insurance company to recover money deposited by one of its agents in the defendant bank. The money was the property of the insurance company, and this was known to the bank. Against this deposit the bank asserted a lien, as banker, for a personal obligation of the agent. The defense of want of jurisdiction was raised by the answer. The supreme court held that it was a case of equitable jurisdiction, because the facts created no privity between the insurance company and the bank, and therefore no action at law

could be maintained by the former against the latter; in other words, as plaintiff could obtain no remedy at law, and had a right, he was entitled to pursue it in equity. In Warner v. Martin, 11 How. 225, no objection to the jurisdiction was taken by any pleading, and the point was disregarded by the court when raised for the first time on the argument. Nothing is said on the subject in the opinion. Duncan v. Jaudon, 15 Wall. 165, is also cited as sustaining the jurisdiction; but the question of jurisdiction was not raised or mentioned, either in pleading, by counsel or in the opinion. A court of equity does not ordinarily raise the exception that a case is not one of equitable jurisdiction of its own motion. Amis v. Myers, 16 How. 492.

In his opinion in National Bank v. Insurance Co., Mr. Justice Matthews quotes from the leading case of Knatchbull v. Hallett, 13 Ch. Div. 696, a criticism by the master of the rolls, Sir George Jessel, upon the common legal adage that "money has no earmarks," and upon a dictum of Lord Ellenborough's in what is also a leading case,—Taylor v. Plumer, 3 Maule & S. 562. The dictum criticised was adopted by Justice Story in his Equity Jurisprudence, and has been quoted supra from that work. Sir George Jessel dissents from the proposition that trust property cannot be traced "when the subject is turned into money, and confounded in a general mass of the same description," because equity will follow money, even if put into a bag or an undistinguishable mass, by taking out the same quantity; and he says the doctrine that money has no earmarks must be taken as subject to the application of this rule. Doubtless, it is true that, while the currency of a country circulates from hand to hand so freely as to render it impossible to identify and trace a particular coin or note, as a rule, yet money may, in exceptional cases, be marked and traced. So, if Lord Ellenborough's statement that money mingled with other money cannot be traced is to be construed as conveying the proposition that in no case can money be traced, it would state what is not a fact; but the question is really one not of law, but of fact. Like National Bank v. Insurance Co., supra, Knatchbull v. Hallett was a case of a bank account and its ownership. The numerous American cases which cite Knatchbull v. Hallett are the most of them cases of bank deposits, usually complicated by the failure of the banks and the conflicting claims of creditors on the one hand to a preference, and on the other to an equal distribution of the assets of the bank. I do not purpose to examine this class of cases. They do not turn, any more than does National Bank v. Insurance Co., upon whether equity has jurisdiction, but upon the rights of the parties to particular deposits or money, or other subjects, a lien upon or right in which is sought to be enforced. Some priority or other is claimed which could only be enforced in equity. These cases are not authorities upon the subject now under consideration. In the present case there is no fund, bank deposit, or particular property which plaintiffs seek to apply to their claim; the conversion of plaintiff's goods to their own use created simply a pecuniary liability. Even though a cause of action involves

equitable features, if the legal remedy by pecuniary judgment is complete, sufficient, and certain, it must be resorted to. Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249.

The judiciary act of 1789 provides that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law." Rev. St. § 723. While a defendant may waive his right to object to the jurisdiction, by failure to take the objection in due time, he is entitled, whenever he expressly claims it, as the defendant has done in this case by his answer, to its benefit. The right is one involving his constitutional privilege of a trial by jury, and cannot be denied by the court. In the present action the remedy granted is substantially the same as that which could have been given in an action at law, and no other relief could have been granted. These facts are conclusive of the question of jurisdiction. It results that the decree of the court below must be reversed, and the cause be remanded to the circuit court with instructions to dismiss the bill as to this appellant for want of jurisdiction, but without prejudice; costs to be taxed against appellee.